PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO.  1:26-CR-14 |
| Plaintiff, ) | |
| ) | |
| v.                      ) | JUDGE BENITA Y. PEARSON |
| ) | |
| JE'VION TOLLIVER-MADDOX, ) | |
| ) | |
| Defendant.       ) | **ORDER** |
| ) | [Resolving ECF No. 20] |

Before the Court is the Government's Motion to Reopen Detention Hearing Pursuant to 18 U.S.C. § 3142(f)(2).  ECF No. 20 [SEALED].  As of the date of this Order, Defendant has not responded.  For the reasons set forth below, the Motion is granted.  The matter of detention is reopened and the case is referred to Magistrate Judge Sheperd to conduct another hearing.

## I.     BACKGROUND

**A.  The Complaint for Robbery**

Defendant Je'Vion Tolliver-Maddox was charged by criminal complaint with: (1) Robbery of Mail, Money, or Other Property of the United States, in violation of 18 U.S.C. § 2114; (2) Keys or Locks Stolen or Reproduced, in violation of 18 U.S.C. § 1704; (3) Using or Carrying of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c); and (4) Bank Fraud, in violation of 18 U.S.C. § 1344.  ECF No. 1.

The complaint alleges that on September 9, 2025, Defendant, in concert with others, robbed a United States Postal Service ("USPS") mail carrier at gunpoint in Ohio City to obtain a

(1:26CR14)

USPS Arrow Key.[1]  ECF No. 1-1, ¶ 16; ECF No. 20 [SEALED] at PageID #: 143.  Security video from the area depicted the gunman retreating to the passenger seat of a white Ford Edge. Using Ohio BMV records, law enforcement connected the vehicle to Defendant.  ECF No. 1-1, ¶¶ 17–18.

Later that same day, Defendant reported his vehicle stolen, telling police he had abandoned the vehicle (with the car keys inside) the night before after drinking at a friend's house.  ECF No. 1-1, ¶¶ 30–31.  The vehicle was located on September 10, 2025, and Defendant consented to having the vehicle searched.  ECF No. 1-1, ¶ 35.  Part of this search included a forensic extraction of the vehicle's "infotainment center" and location data.  ECF No. 1-1, ¶ 37. Data collected from the vehicle indicated that Defendant's phone connected to the vehicle's Apple CarPlay system on September 9, 2025, contradicting Defendant's claim that he had not seen the car since the day before.  ECF No. 1-1, ¶¶ 37–40.  In addition, cell tower data pinged Defendant's cell phone at eight key areas and times where the vehicle had been witnessed before, during, and after the robbery on September 9, 2025.  ECF No. 1-1, ¶ 41.

Ten days after the robbery, Defendant began fraudulently depositing checks stolen from mailboxes.  Investigators also observed Defendant using social media to recruit co-conspirators to fraudulently deposit checks taken from mailboxes.  ECF No. 1-1, ¶¶ 47–64.

**B. Preliminary and Detention Hearing**

Defendant was arrested on December 18, 2025.  At his initial appearance, he requested a detention and preliminary hearing.  *See* Minutes of proceedings [non-document] before

---

[1] A universal master key used by USPS employees to access collection boxes, outdoor parcel lockers, cluster box units, and apartment panels to collect mail and packages.  Arrow Keys are subject to extensive security measures and regulations.  ECF No. 1-1, ¶ 8.

2

(1:26CR14)

Magistrate Judge Jennifer Dowdell Armstrong (Dec. 18, 2025). Magistrate Judge Reuben J. Sheperd conducted a detention hearing on December 29, 2025, and ordered Defendant released on conditions. ECF No. 8; ECF No. 13.

During the hearing, the parties agreed that there is a presumption of detention. ECF No. 13 at PageID ##: 64–65. The Government proffered four exhibits: (1) the criminal Complaint (ECF No. 1); (2) a Ring security camera video of the robbery; (3) an Instagram post in which the other robbery suspect asked about Defendant's plans to use of the "the key"; and (4) an inventory list from the search warrant executed at Defendant's residence. ECF No. 13 at PageID #: 67. The Government also informed the magistrate judge that the investigation was ongoing, and that additional information was needed to determine the role everyone played in the robbery. ECF No. 13 at PageID #: 98.

After challenging probable cause, Defendant presented evidence rebutting the presumption of detention. His mother testified that Defendant lived with her and that she kept two firearms in the house, which police confiscated when they arrested Defendant. ECF No. 13 at PageID ##: 87–89. She further testified that, if released on bond, Defendant would continue to reside with her and work for Spark, a Walmart delivery service. ECF No. 13 at PageID ##: 89–90. Defendant also proffered that he has no history of drug abuse, has lived in Cleveland his entire life and has strong community ties, including family members who attended the hearing in support. ECF No. 13 at PageID #: 95.

The magistrate judge first concluded that there was sufficient probable cause and bound the matter over to the grand jury. ECF No. 13 at PageID #: 107. Next, the magistrate judge addressed the issue of detention, finding that Defendant satisfied his burden to rebut the presumption of detention, based on his mother's testimony, community support system, and

3

(1:26CR14)

limited criminal history.  ECF No. 13 at PageID #: 108.  The burden then shifted to the Government to provide clear and convincing evidence that no conditions would assure Defendant's appearance at court proceedings or the safety of the community.  The magistrate judge indicated that there was no evidence suggesting that Defendant was a flight risk.  ECF No. 13 at PageID #: 108.

Weighing the § 3142(g) factors, the magistrate judge concluded that the nature and circumstances of the alleged crime weighed in favor of detention because holding a federal employee at gunpoint and taking federal property (*i.e.*, the Arrow Key) was serious and dangerous.  Next, the magistrate judge determined Defendant's personal characteristics weighed against detention because of Defendant's limited criminal history and community support.  The magistrate judge acknowledged that Defendant was potentially dishonest when he reported his vehicle stolen and claimed that he did not own a cell phone.  The court also noted that the violent nature of the alleged crime (*i.e.*, robbing a federal employee at gunpoint) weighed against Defendant.  ECF No. 13 at PageID ##: 109–11.  The magistrate judge concluded that the decision was a "close" call but concluded that the Government had not demonstrated by clear and convincing evidence that Defendant posed a flight risk or that there were no conditions that could reasonably assure the safety of the community.  Defendant was released on a $20,000 unsecured bond with several conditions, including home detention.  ECF No. 13 at PageID #: 114.

On January 7, 2026, a grand jury returned an indictment against Defendant for: (1) Robbery of Property of the United States, in violation of 18 U.S.C. § 2114; (2) Keys or Locks Stolen or Reproduced, in violation of 18 U.S.C. § 1704; and (3) five counts of Bank Fraud, in violation of 18 U.S.C. § 1344(2).  ECF No. 10

4

(1:26CR14)

### C. Newly Discovered Information

Following Defendant's arrest and detention hearing, the criminal investigation continued and remains ongoing. ECF No. 20 [SEALED] at PageID #: 146. As part of that investigation and after Defendant's detention hearing had concluded, law enforcement obtained a search warrant for a suspected co-conspirator's cell phone and data that was extracted from that device. Although review of the data is ongoing, information is now available relating to Defendant's involvement before, during, and after the armed robbery. Such information includes, *inter alia*: (1) at least six FaceTime calls between Defendant's phone and the other robbery suspect the morning of the robbery, including two calls logged by the Ford Edge's system; (2) Defendant's vehicle was at the other robbery suspect's house the morning of the robbery; and (3) a group text started by Defendant that contain photographs of Defendant driving the Ford Edge the morning of the robbery, undermining his claims that the vehicle had been stolen the night before. ECF No. 20 [SEALED] at PageID ##: 146–48.

## II.　LAW AND DISCUSSION

The Government seeks to reopen the detention hearing based on the new information obtained after since December 29, 2025. A detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). The statutory provision is strictly interpreted, and a detention hearing may only be reopened "if the evidence proffered was [not] available at the time of the hearing." *United States v. Floyd*, No. 5:21-cr-736-4, 2022 WL 2818445, at *3 (N.D. Ohio July 18, 2022)

5

(1:26CR14)

(Lioi, J.); see *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *1 (6th Cir. May 21, 2020) ("Courts interpret this requirement strictly, requiring a showing of truly changed circumstances or a significant event."). The new information must be material to the determination that bond conditions will "reasonably assure" that the defendant will appear a trial and the safety of the community. *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012); *United States v. Knott*, No. 1:23-cr-279, 2023 WL4116011, at *4 (N.D. Ohio June 22, 2023) (Brennan, J.).

      The Government first argues that the other robbery suspect's cell phone device was searched after Defendant's detention hearing and, as such, the information discovered on that device was not previously known to the Government. ECF No. 20 [SEALED]. That argument is well taken. The data from the other robbery suspect's phone was not available to the Government until after the search warrant was executed, which did not occur until after December 29, 2025 (*i.e.*, date of Defendant's detention hearing). The information is, therefore, new information.

      Next, the Government argues that the new information is material to the determination of whether there are conditions that will reasonably assure Defendant appears in these proceedings and public safety. *See Watson*, 475 F. App'x at 600. New information must indicate "truly changed circumstances, something unexpected, or a significant event" to warrant reopening a detention hearing. *Floyd*, 2022 WL 2818445, at *3 (quoting *United States v. Jerdine*, No. 1:08-cr-481, 2009 WL 406564, at *3 (N.D. Ohio Dec. 18, 2009)) (internal quotation omitted).

      During the detention hearing, the Government conceded that the investigation was ongoing and that it was, at that time, unclear what role Defendant allegedly played in the robbery. ECF No. 13 at PageID #: 98. Now the new information purports to place Defendant in

6

(1:26CR14)

the driver's seat of the getaway vehicle (which he later reported had been stolen the previous evening), driving around with the robbery suspect mere hours before the crime occurred. ECF No. 20 [SEALED] at PageID ##: 149–50. The Government argues that such information calls into question not only whether Defendant can and will comply with any bond conditions, but also whether the community will be safe during his release. In particular, the Government maintains that Defendant facilitated and participated in an armed robbery of a federal employee and then fraudulently told police his vehicle had been stolen the night before the robbery to conceal his involvement. ECF No. 20 [SEALED] at PageID ##: 149–50.

Furthermore, the new information undermines Defendant's claims that the vehicle was stolen prior to the robbery and that he did not have a phone at the time of the robbery. As such, the Government legitimately questions whether Defendant will comply with his bond restrictions or truthfully interact with Pretrial Services, given he has already lied to police in an alleged attempt to cover up his conduct on September 9, 2025. The Government argues that these considerations, in combination with the severe nature of the alleged crime, indicate that reopening the detention hearing is appropriate. The Court agrees that the newly discovered information is significant and may impact the § 3142(g) analysis, warranting that the detention hearing be reopened.

Therefore, this case is referred to Magistrate Judge Sheperd to conduct another hearing and to weigh again the § 3142(g) factors in light of the new information proffered by the Government and responded to by the defense. See *United States v. Baker*, No. 6:21-cr-32-CHB, 2021 WL 2744512, at *4 (E.D. Ky. July 1, 2021) (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003) ("[I]f a magistrate judge conducts the initial detention hearing, any motions to reopen that hearing under § 3142(f) should be directed at that same magistrate judge.).

7

(1:26CR14)

### III. CONCLUSION

For the foregoing reasons, the Government's Motion to Reopen the Detention Hearing (ECF No. 20 [SEALED]) is granted.  During or prior to that reopened hearing, Defendant shall be given an opportunity to respond to the newly discovered evidence.  Magistrate Judge Sheperd shall conduct the reopened hearing and weigh again the § 3142(g) factors in light of the new information proffered by the Government and responded to by the defense.

IT IS SO ORDERED.

| | |
|---|---|
| February 4, 2026 | /s/ *Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |